IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE MASON AND DIXON LINES, INCORPORATED,<br><br>    Plaintiff,<br><br>vs.<br><br>WALTERS METAL FABRICATION, INC.,<br><br>    Defendant. | Case No. 13-cv-1262-SMY-DGW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on The Mason and Dixon Lines, Incorporated's ("MADL") motions to dismiss (Docs. 17 & 27).  Defendant Walters Metal Fabrication, Inc. ("Walters") filed responses (Docs. 19 & 31) to which MADL replied (Docs. 20 & 33).  For the following reasons, the Court denies as moot MADL's first motion to dismiss (Doc. 17) and grants MADL's second motion to dismiss (Doc. 27).

1. Background

As an initial matter, the Court notes that MADL's motion to dismiss (Doc. 17) dated January 16, 2014 was directed at Walters' counterclaims alleged along with Walters' answer to MADL's original complaint. Since that time, MADL filed an amended complaint, and Walters filed an answer to the amended complaint along with its counterclaims.  As such, the Court denies as moot MADL's motion to dismiss (Doc. 17) dated January 16, 2014.  The Court will turn to address MADL's second motion to dismiss (Doc. 27) dated April 2, 2014.

This matter arises out of a contract entered into between Walters and MADL for the transportation of an over-dimensional shipment of goods.  Walters is a metal fabrication company located in Granite City, Illinois, that sought to transport its product, pipe spools, to a

customer located in Mont Belvieu, Texas. As such, Walters contracted with MADL to deliver the over-dimensional load.[1] MADL secured a permit for an over-dimensional shipment from the Illinois Department of Transportation ("IDOT").[2] The permit provided for the shipment of a load the height of 15 feet, 9 inches and provided a route the driver was required to follow when delivering the load. On December 29, 2012, while following IDOT's mandatory route, the driver drove the load into the underside of the Herrin Road Bridge on Interstate Highway 57 causing damage to the load.

On June 30, 2013, Walters filed a "Standard Form for Presentation of Loss and Damage Claims" for $391,922.11 (Doc. 11-6). Walters' claim was denied in a letter from Universal Am-Can, Ltd.[3] dated September 19, 2013 (Doc. 11-7). Thereafter, Walters demanded immediate payment of the claim plus delay claims. Walters further claimed an offset in the amount of $138,838.50 against transportation invoices from a separate corporation affiliate of MADL that was not a party to the contract. MADL filed the instant action asking the Court to declare as follows: (1) the Tariffs and Bill of Lading apply to the shipment at issue; (2) MADL's compliance with IDOT's permit constitutes a *force majeure* relieving MADL of liability; (3) alternatively, if the Court finds no *force majeure*, Walters' recovery is limited to $100,000; and (4) Walters' retention of the $128,838.50 due to another corporate entity was not an allowable set-off. Walters' filed a counterclaim alleging both a negligence claim and a claim arising under the Federal Carmack Amendment, 49 U.S.C. § 14706.

---

[1] The Illinois Vehicle Code limits the height of any vehicle to 13 feet, 6 inches "from the under side of the tire to the top of the vehicle, inclusive of load." 615 ILCS 5/15-103.
[2] Illinois requires the individual or company making the movement of a load exceeding the maximum size and weight requirements, as specified in the Illinois Vehicle Code, to apply for a permit. 625 ILCS 5/15-301. At its discretion, IDOT may prescribe the route which the carrier must follow when delivering the load. *Id*.
[3] MADL does not elaborate on its relationship with Universal Am-Can, Ltd.; however, Universal Am-Can, Ltd. appears to be a corporate affiliate of MADL.

MADL filed its motion to dismiss (Doc. 27) pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that Walters' negligence claim must be dismissed for failure to state a claim. Specifically, MADL argues that the Federal Carmack Amendment, 49 U.S.C. § 14706(a), preempts any state law claim arising from damage to cargo during the interstate transportation of goods by motor carrier.  In its response, Walters contends that (1) the issue of whether MADL is a motor carrier or a broker should not be determined on a motion to dismiss; (2) the Carmack Amendment does not preempt Walters' claims which extend beyond the damage to property; and (3) the Carmack Amendment does not preempt any state law claims against any defendant who is not a motor carrier.

In its reply, MADL contends that Walters admitted MADL was a motor carrier in Walters' counterclaim allegations.  Specifically, MADL points to the following portions of Walters' counterclaim:

> 5. On November 8, 2012, Walters contracted [MADL] to haul cargo from its facility to its customer's facility in Baytown, Texas.  []
> 6. [MADL] issued a bill of lading to Walters [], obtained permits from the State of Illinois and hired a pilot car to guide the load.
> 7.  While hauling the cargo on I-64 in Williamson County, Illinois, [MADL] acting through its agents or employees, drove the load into the underside of the Herrin Road bridge at 57 mph.

(Doc. 26, p. 3).  The Court will consider the parties' arguments in turn.

2. Analysis

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This requirement is satisfied if the

complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level.  *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl.*, 550 U.S. at 556).

Finally, a litigant need not anticipate and affirmatively address defenses in its complaint to survive a motion to dismiss.  *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004).  However, a party may "plead itself out of court by alleging (and thus admitting) the ingredients of a defense" on the face of the complaint.  *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

With these standards in mind, the Court will consider whether Walters has properly pleaded a negligence counterclaim against MADL.  It is well established that the Carmack Amendment, included within the Interstate Commerce Act, preempts state-law causes of action for damages against a motor carrier for damaged goods.  *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008); *see also Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 288 (7th Cir. 1997).  However, the Carmack Amendment only preempts those causes of actions for damages to the goods, not every conceivable cause of action associated with the delivery of goods.  *Gordon*, 130 F.3d at 289.  The Seventh Circuit has specifically suggested that "a carrier might be liable to a shipper under a statute prohibiting deceptive trade practices, or a bailor might be able to recover from a bailee in tort if the claim for relief does not depend on the existence of a contract."  *Id*.

First, the Court will address Walters' argument that the Carmack Amendment does not preempt its claims extending beyond damage to its property. Count One clearly alleges a state law negligence claim resulting from the damage to its goods and the resulting damages caused by a delay in delivery of those goods. Walters does not allege a separate cause of action, such as deceptive trade practices, that is not associated with the delivery of the goods. As such, this argument fails.

Next, Walters' contends that the Carmack Amendment does not preempt any cause of action against MADL because it is not clear whether MADL is a broker, motor carrier, or freight forwarder. If MADL is a broker, the Carmack Amendment would not preempt Walters' negligence claim. However, if MADL is a motor carrier, Walters' negligence claim against MADL must be dismissed. MADL argues that Walters has pleaded itself out of court on its negligence claim because it has alleged facts clearly describing MADL as a motor carrier, not a broker. Thus, the Court must determine whether Walters has alleged facts conclusively describing MADL as a carrier warranting dismissal of the negligence claim.

The Interstate Commerce Act defines the relevant concepts. A "broker" is

> a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13012(2). A "motor carrier" is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13012(14). Finally, a "freight forwarder" is

> a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation for compensation and in the ordinary course of its business – (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments; (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and (C) uses

>for any part of the transportation a carrier subject to jurisdiction under this subtitle.

49 U.S.C. § 13012(8).

"Whether a company is a broker or a carrier/freight forwarder is not determined by how it labels itself, but by how it holds itself out to the world and its relationship to the shipper." *Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc.*, 303 F. Supp. 2d 920, 921 (N.D. Ill. 2003). The distinction between a broker and a carrier is not always clear. *See Neb. Turkey Growers Coop. Ass'n v. ATS Logistics Servs.*, No. 4:05-cv-3060, 2005 WL 3118008, at *4 (D. Neb. Jan. 13, 2014). One crucial distinction between a carrier and broker is the legal responsibilities taken on by the party. 49 C.F.R. § 371.2(a). In this case, if MADL took legal responsibility for transporting the goods, regardless of who actually delivered them, MADL is a carrier. However, if MADL made an agreement with Walters to simply arrange for transportation of the goods, MADL is a broker. *See CGU Int'l Ins., PLC v. Keystone Lines Corp.*, No. C-01-3751 SC, 2004 WL 1047982 (N.D. Cal. May 5, 2004).

Here, on a motion to dismiss, the Court must accept as true all facts as pleaded in Walters' counterclaim. Initially, the Court notes that in Count One of Walters' counter-claim, Walters' alleges MADL is both a "freight carrier and freight broker" (Doc. 26, p. 3). This conclusory pleading alone, however, is not sufficient to sustain Walters' negligence claim. Walters alleges it contracted with MADL "to haul cargo from [Walters'] facility to its customer's facility." A motor carrier, not a broker, would take on the responsibility of hauling the cargo to Walters' customer. Walters also alleges MADL obtained permits from IDOT to transport the over-dimensional load. Again, in line with the statutory definitions, a motor carrier, not a broker, would undertake this task. *See* 625 ILCS 5/15-301 (requiring the entity transporting the goods to make the permit application for an over-dimensional load). Thus, based on the facts pleaded in

the counterclaim, Walters has "plead[ed] itself out of court" with respect to its negligence claim.

*See U.S. Gypsum Co.*, 350 F.3d at 626.

3. Conclusion

For the foregoing reasons, the Court **DENIES as moot** MADL's first motion to dismiss (Doc. 17) and **GRANTS** MADL's second motion to dismiss (Doc. 27).

**IT IS SO ORDERED.**

**DATED:** September 16, 2014

s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**
